**Sidney ANDERSON, Plaintiff,**

v.

**Dale THOMAS, Warden of Metropolitan Correctional Center, and Mr. Jones, Officer of the United States Postal Inspector, Defendants.**

**No. 83 Civ. 1855(MP).**

United States District Court,
S.D. New York.

May 18, 1984.

---

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Mary Anne Wirth, New York City, for defendants.

Sidney Anderson, pro se.

## MEMORANDUM

MILTON POLLACK, Senior District Judge.

 Plaintiff, a federal prisoner, brought this *pro se* civil rights action[1] against Dale Thomas, the Warden of the federal Metropolitan Correctional Facility ("MCC") in Manhattan, and Daniel Jones, a United States Postal Inspector, to recover damages and obtain certain injunctive relief to remedy alleged physical and mental

---

1. The action is incorrectly styled as one arising under 42 U.S.C. § 1983, a statute which autho- rizes civil actions only against *state* officials.

**572**

injuries he claims defendant Jones inflicted upon him, allegedly in violation of plaintiff's constitutional rights under the fourth and eighth amendments.

The complaint alleges that Jones, while escorting plaintiff to the MCC from the adjacent federal court house after a proceeding related to plaintiff's federal robbery prosecution, tightened handcuffs on his wrists so as to cause pain, threw him up against a court house wall, hit and kicked him, and, while motioning for his gun, threatened him by saying "I'll get you."

The defendants have moved, pursuant to Rules 12(b)(1), (5), and (6) and 56 of the Federal Rules of Civil Procedure, for an order dismissing the complaint, and for summary judgment. The Court has received no responsive papers to the defendants' motion. For the reasons which follow, summary judgment will be granted in favor of both defendants.

*Facts Underlying the Controversy*

On December 20, 1982, pursuant to the request of the Assistant United States Attorney ("AUSA") in charge of plaintiff's prosecution [2] plaintiff was produced from the MCC by the United States Marshal's Office and escorted by Postal Inspector Edwin Cuebas to the United States Attorney's office, then to the Part One Courtroom in the federal court house, and then back to the Marshal's detention area at the MCC, all for the purpose of obtaining an item of plaintiff's clothing for use in a scent identification procedure. Defendant Jones was an additional escort for plaintiff on the latter two legs of this walk.

According to Jones' affidavit, either he or Cuebas placed handcuffs on plaintiff's arms, in accordance with routine practice and without complaint from plaintiff, prior to their departing from the Part One Courtroom. Jones avers that when the group—which then also included both the AUSA and plaintiff's defense counsel—exited the court house elevator, plaintiff attempted to walk quickly ahead of Cuebas and Jones,

and Jones, in response, "placed [his] hand firmly on Mr. Anderson's left bicep in order to restrain his accelerated pace and maintain custody of him."

Jones' affidavit further states that plaintiff then attempted to jerk and pull away from Jones, and complained loudly that Jones was treating him like a dog. Jones specifically denies pushing or throwing plaintiff against a wall, striking or kicking him, motioning for his gun, or threatening him verbally.

Affidavits from Cuebas and the attorney who then represented plaintiff, submitted in support of defendants' motion, corroborate Jones' statements that he did grab plaintiff's arm when plaintiff sought to walk ahead of his escorts, that Anderson tried to jerk away from Jones, but that Jones neither struck nor kicked plaintiff, nor pushed or threw plaintiff against the wall, nor motioned for his weapon, nor threatened plaintiff verbally.

Plaintiff's complaint states that there were no physical signs of the injuries allegedly incurred by him, but further states "I did make attempts to see the Doctor here at M.C.C. for nervousness, headaches, but the doctor was out for a couple of days." Affidavits submitted on behalf of defendants indicate a physician's assistant was physically present at MCC at all times in December, 1982; that a doctor was on duty at the MCC on December 20–23, 27, and 28, 1982 and January 3, 1983, and that there is no record of any medical complaints from plaintiff during the period December 20, 1982 to January 3, 1983.

*Discussion*

*A. Liability of Jones*

 Even assuming that Jones' conduct with respect to plaintiff was tortious as a matter of state law, as a federal officer charged with official custodial duties over plaintiff, Jones is absolutely immune from liability for common law torts committed within the scope of those duties. *Hunting-*

---

**2.** Plaintiff subsequently pleaded guilty to robbery of a federal postal facility, and was sentenced to a term of imprisonment.

ton Towers, Ltd. v. Franklin National Bank, 559 F.2d 863, 870 (2d Cir.1977), cert. denied 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978) ("federal officials are not personally liable for alleged torts based upon acts committed within the scope of their official duties requiring the exercise of judgment or discretion"); Wyler v. United States, 725 F.2d 156, 159 (2d Cir.1983); see also George v. Kay, 632 F.2d 1103, 1105 (4th Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981) (federal postal inspector entitled to absolute immunity from common law tort liability "if the acts complained of were within the outer perimeter of [his] authority").

This absolute immunity, however, does not serve to shield a federal official from liability arising from harms caused by unconstitutional conduct.[3] See, e.g., Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Birnbaum v. United States, 588 F.2d 319, 332 (2d Cir.1978).

Thus, the issue presented on this motion is whether the pleadings and affidavits on file in this action show a genuine issue as to any material fact exists with respect to whether Jones' handling of plaintiff violated plaintiff's constitutional rights.

■ While the application of undue force by law enforcement officers can deprive an individual of liberty without due process of law, in violation of the fifth or fourteenth amendments, "the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action" for battery or assault. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been

crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Id. at 1033.

■ The record before the Court reflects uncontroverted facts that plaintiff suffered no visible injuries from the alleged mistreatment and that whatever physical force Jones employed was applied in an effort to keep plaintiff under his control and custody. Therefore, even disregarding the unrebutted affidavit testimony to the effect that Jones did nothing more than grasp plaintiff's arm and that plaintiff never sought medical attention, it is plain that plaintiff has neither alleged nor substantiated any unconstitutional conduct by Jones. See Estes-El v. State of New York, 552 F.Supp. 885, 890 (S.D.N.Y.1982) (allegations that plaintiff "was handcuffed too tightly, shackled to a wall, and forced to remove his headgear" do not, "without a showing of further force or damage, rise[ ] to a level of a constitutional wrong," and hence summary judgment is to be granted); Bates v. Westervelt, 502 F.Supp. 94, 96 (S.D.N.Y.1980) (allegations of brutality by police officer did not "cross[ ] the constitutional line", and action therefore dismissed, in part due to lack of evidence showing extent or existence of injury); Santiago v. Yarde, 487 F.Supp. 52, 54 (S.D.N.Y.1980) (Inmate's "allegation of unspecified bruises on the arms and legs does not 'shock the conscience' in the context of this case, where plaintiff does not controvert the defendant's claim that he and the other correction officers were engaged in a good faith effort to maintain order and discipline.").

---

3. Defendants contend that even if Jones' conduct rose to the level of a constitutional tort, he is nevertheless shielded from liability under the *qualified* immunity accorded to government officials under *Harlow v. Fitzgerald*, 457 U.S. 800,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In light of the Court's conclusion that no constitutional violation has been either alleged or substantiated, the question of qualified immunity is not addressed herein.

574

Thus, reading plaintiff's complaint with the generosity appropriate in *pro se* civil rights actions, and accepting all of the averments in the complaint as true, the Court concludes, in light of all the pleadings and affidavits on file, that there is no genuine issue as to any material fact concerning whether Jones' conduct violated plaintiff's constitutional rights. Accordingly, summary judgment in favor of defendant Jones will be granted.

### B. *Liability of Thomas*

The complaint alleges that defendant Thomas, the Warden of the MCC, acted negligently and in violation of plaintiff's fourth amendment right against unlawful seizure by turning plaintiff over to the custody of the postal inspectors. The complaint in no way identifies how Thomas was involved in the transfer of plaintiff to the inspectors or how such transfer could have violated plaintiff's rights. Indeed, Thomas' uncontroverted affidavit states that he had no personal involvement whatsoever in releasing plaintiff to the inspectors. It further appears that it was the Marshal Service, and not MCC officials, who turned plaintiff over to the inspectors.

On this state of the record, it is plain that there is no genuine issue as to any material fact with respect to Thomas' liability, and accordingly he is entitled to a summary judgment as a matter of law.

### Conclusion

Summary judgment in favor of the defendants is accordingly granted in all respects.

SO ORDERED.