**Marvin ANDERSON, Plaintiff,**

v.

**James E. SULLIVAN, Superintendent,
G. Kearns, Corr. Sgt.; M. Holmes,
Corr. Officer, Defendants.**

**No. 88 Civ. 1420 (RWS).**

United States District Court,
S.D. New York.

Dec. 2, 1988.

Marvin Anderson, Dannemora, N.Y., pro se.

Robert Abrams, Atty. Gen., of the State of New York, New York City (Darren O'Connor, Asst. Atty. Gen., of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants James E. Sullivan ("Sullivan"), Gregory Kerns ("Kerns"), and Millord Holmes ("Holmes") have moved for summary judgment, Fed.R.Civ.P. 56, to dismiss the complaint of Marvin Anderson ("Anderson"), which alleges an unconstitutional use of force and deprivation of due process in violation of 42 U.S.C. § 1983. Upon the following facts and conclusions, the motion is granted and the complaint dismissed.

*The Parties*

Sullivan is the superintendent of Sing Sing Correctional Facility, a New York State prison in which Anderson was incarcerated.

Holmes is a correction officer. During the incident in question, Kerns was Holmes's supervisor.

*The Pleadings*

The defendants have submitted affidavits, a memorandum of law, and Anderson's deposition in support of their motion. In opposition to the motion, Anderson has submitted an affidavit and has referred to the deposition of Leon Payton, another Sing Sing prisoner.

*Summary Judgment Standard*

In the summary judgment context, the moving party bears the burden of proving that there exists no genuine issue of material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988), all doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). Except as noted below, the facts are not in dispute.

*The Incident*

On the morning of December 18, 1987, Holmes was on duty in Sing Sing's A Block mess hall. At about 8:25 a.m., he observed Anderson attempting to leave the mess hall with a milk carton. An argument ensued, and Anderson upon request failed to produce his identification card, which inmates are required to carry at all times.

Holmes sought the assistance of Kerns, who arrived and directed Anderson to produce his identification card and state his name. Anderson said he did not have his identification card. According to Holmes, Anderson then turned to him and said, "I'm going to get you."

Kerns decided to lock Anderson in his cell, which Anderson stated was in O Gal-lery. Kerns and Holmes began to escort Anderson to his cell. As they passed through J Gallery on their way to O Gallery, Kern ordered Anderson to extend his arms to be handcuffed. The Officers allege that Anderson refused this order, but Anderson claims he complied. Kerns pulled Anderson's right arm behind his back, and Holmes grabbed Anderson's left arm and moved it behind his back. The two then moved Anderson a short distance across the hall against a cell wall where Kerns applied the handcuffs. According to Anderson, Kerns and Holmes grabbed his arms, moved them "up in the air" behind his back, and pushed him "into the bars."

In accordance with Sing Sing's standard procedure requiring that an inmate be brought to the prison's infirmary for a physical examination whenever force is used, Kerns and Holmes escorted Anderson to the infirmary. On the way there, Kerns and Holmes asked the A block officer in charge ("OIC") if he knew Anderson's identity. The OIC did not, but he checked into the matter while Kerns and Holmes completed the trip to the infirmary. At the infirmary, Anderson complained of injury to his arm, and Registered Nurse Eugenia Jones examined him. Nurse Jones noted no injuries and determined that no treatment was required, although Anderson claims that she stated his arm would be sore for several weeks.

A correction officer arrived from the "movement and control" office, which is near the infirmary and which maintains photographs of all inmates. When the officer produced Anderson's identification picture, Kerns determined his cell location. Anderson was brought to the Psychiatric Satellite Unit for a mental examination, and then was escorted to his cell.[1]

According to Anderson the side of his face struck the bar when Kerns and Holmes were applying handcuffs and thereafter became swollen. However, he admitted that his face did not hurt and that he never complained to anyone about the injury. He testified at his deposition that

---

1. Previously, in October 1987, Anderson had attempted suicide by hanging himself in his cell.

his left shoulder was injured when Kerns and Holmes were holding his arms behind his back.

On January 13, 1988, Anderson sought treatment for his left shoulder, claiming his shoulder pain was related to the December 18, 1987, incident. Anderson says he had made prior complaints, but no record exists. The Sing Sing medical staff provided Anderson with analgesic balm. An x-ray of Anderson's left arm revealed no injuries.

Following the incident, Holmes filed a misbehavior report, charging Anderson with refusing to obey a direct order, creating disturbances, making threats, and failing to carry an identification card. However, because the disciplinary hearing could not be scheduled within seven days, as is required where an inmate is confined in his cell pending a hearing, the misbehavior report was dismissed and the merits of the charges were never considered.

Sullivan had no notice of and was not present during the December 18 incident. To his knowledge, there had been no prior instances where Kerns or Holmes used excessive force against inmates.

*Excessive Force*

■ An inmate's constitutional protection against excessive force by correction officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Thus, as the Second Circuit has noted, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.; see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).[2] Factors to be considered in assessing whether a use of force violates the constitution include:

the need for the application of force, the relationship between the need and the amount of force that was used, the ex-

tent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick,* 481 F.2d at 1033.

A use of force that constitutes the tort of battery does not necessarily violate the Eighth Amendment. For example, in *Estes–El v. State of New York,* 552 F.Supp. 885, 890 (S.D.N.Y.1982), the court dismissed a claim that police officers used excessive force when they handcuffed plaintiff, shackled him to a wall, and forcibly removed his headgear. The plaintiff in *Estes–El* was a free citizen, not a prison inmate, and was not physically injured in the incident. *See also Black Spotted Horse v. Else,* 767 F.2d 516 (8th Cir.1985) (complaint dismissed where plaintiff alleged that a correction officer pushed a cubicle wall which struck and bruised plaintiff's legs and that the officer belligerently ordered plaintiff out of the cubicle and poked him in the back); *Ramos v. Hicks,* No. 87 Civ. 2272, slip op. (S.D.N.Y. July 25, 1988) [1988 WL 80176] (LBS) (summary judgment granted in favor of correction officer who allegedly punched an inmate, cutting his lip, after the inmate attempted to rip a telephone off a wall); *Anderson v. Thomas,* 585 F.Supp. 570 (S.D.N.Y.1984) (summary judgment granted where physical force was used on an inmate in an effort to keep him under control and custody); *Ricketts v. Derello,* 574 F.Supp. 645 (E.D.Pa.1983) (complaint dismissed where plaintiff alleged unwelcome shove by prison guard accompanied by a threat with a weapon); *Santiago v. Yarde,* 487 F.Supp. 52, 54 (S.D.N.Y.1980) (summary judgment granted against plaintiff's complaint that a correction officer used excessive force resulting in bruises on his arms and legs, where officer was engaged in good faith effort to maintain order); *Argentine v. McGinnis,* 311 F.Supp. 134, 138 (S.D.N.Y. 1969) ("prison authorities may use reason-

---

**2.** In *Johnson v. Glick,* the Second Circuit analyzed an inmate's excessive force claim under the due process clause. In *Whitley,* the Court noted that the Eighth Amendment is the primary source of protection for convicted prison-

ers where the deliberate use of force is challenged as excessive. 475 U.S. at 318–19, 106 S.Ct. at 1084. The same standard applies in either case.

able force on prisoners when administering prison regulations").

■ According to Anderson, Kerns and Holmes used excessive force when they pushed him into a bar and put his hands behind his back to apply handcuffs. However, Anderson admitted that he had violated at least the rule requiring inmates to carry identification cards. Moreover, prison regulations expressly authorize correction officers to use physical restraints when transporting an inmate within a facility. *See* 7 N.Y.C.R.R. § 250.2(h).

Even assuming, as Anderson claims, he did not refuse to be placed in handcuffs, the amount of force was not significantly disproportional to the goal of handcuffing plaintiff. Anderson acknowledges that Kerns or Holmes did not hit him, but pulled his hands behind his back and pushed him against a bar in the process. Such actions are reasonably related to the application of restraints.

Moreover, Anderson's injuries are not severe. The nurse's physical examination after the incident revealed no injuries. Anderson sought no treatment for injury to his face and does not allege that it persists. An x-ray of the left shoulder revealed no fracture, destructive lesion, or dysplasia.

In sum, the use of force was restrained and resulted in little or no harm to Anderson. Accordingly, his excessive force claim is dismissed.

*The Misbehavior Report as a Denial of Due Process*

■ Anderson also alleges that the filing of a false misbehavior report infringed his right to due process of law. However, the only constitutional issue this claim raises is whether the disciplinary proceeding that followed the misbehavior report violated the due process clause. Because Anderson alleges no such violation, he cannot establish a valid claim under § 1983, even assuming the misbehavior report was false.

In *Freeman v. Rideout*, 808 F.2d 949 (2d Cir.1986), *petition for reh'g en banc denied*, 826 F.2d 194 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), the complaint alleged, and the trial court found, that plaintiff had been sentenced to 30 days' segregation after a disciplinary hearing commenced upon false charges filed by a correction officer. The Second Circuit held that "[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Id.* at 951. Thus, as long as the disciplinary proceeding that follows a false misbehavior report complies with due process, the "filing of unfounded charges [does] not give rise to a *per se* constitutional violation actionable under section 1983." *Id.* at 953.

The filing of false disciplinary charges may support a claim under § 1983 where the accusation infringed on an inmate's substantive constitutional rights. For example, in *Franco v. Kelly*, 854 F.2d 584 (2d Cir.1988), the Court upheld a complaint alleging that the inmate was disciplined as a result of false charges brought in retaliation for the inmate's exercise of his First Amendment right to petition the government.

*Wolff v. McDonnell*, 418 U.S. 539, 564–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974) defines the procedural due process requirements for inmate disciplinary proceedings as: advance written notice of the violation, a written statement of fact finding, and the right to present witnesses and evidence where doing so would not be unduly hazardous to institutional safety. Where an inmate is confined pending the disciplinary hearing (assuming such confinement impairs a state-created liberty interest), due process requires only an informal review of the case within a reasonable time after confinement. See *Hewitt v. Helms*, 459 U.S. 460, 472–77, 103 S.Ct. 864, 871–74, 74 L.Ed.2d 675 (1983) (due process satisfied where informal review took place five days after confinement).

Here, Anderson received advance notice of the charges, and the disciplinary proceeding was dismissed in its initial stages because a full hearing did not take place within seven days. Thus, the disciplinary proceeding did not violate due process and

indeed Anderson was not even punished as a result of the allegedly false charges.

■ The fact that Anderson was confined to his cell pending a hearing that did not transpire does not violate a liberty interest. Generally, confining an inmate for disciplinary reasons affects a liberty interest and requires the procedural protections set forth in *Wolff,* but confining him for administrative reasons does not. *See Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988). The Second Circuit has held that "an interim confinement pending disciplinary proceedings is administrative, not disciplinary." *Id.* at 37 (citing *Bolden v. Alston,* 810 F.2d 353, 357 n. 3 (2d Cir.1987)). Accordingly, Anderson's confinement to his cell pending the disciplinary hearing did not violate his rights, even though the disciplinary hearing never transpired.

The claim based on the misbehavior report is dismissed.

*Prison Superintendent's Personal Responsibility*

■ A defendant's personal involvement in the constitutional violation is a prerequisite to imposing damages in a civil rights suit. A supervisory official is not liable simply by virtue of his subordinates' actions. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). In *Williams,* the Second Circuit outlined four ways in which a supervisory official may be personally involved in a § 1983 violation: he may (1) be directly involved, such as where a warden orders an inmate disciplined; (2) fail to remedy a wrong after learning of the violation through a report or appeal; (3) have created or allowed to continue a policy under which the violation occurred; or (4) have been grossly negligent in managing subordinates who caused the unlawful condition. *Id.* at 323–24.

■ A prison superintendent generally is not liable for an isolated incident about which he had no notice. In *Gill v. Mooney,* 824 F.2d 192 (2d Cir.1987), for example, an inmate's complaint alleged that one correction officer ordered the inmate to continue working on an unsafe ladder, which thereafter fell over, and that another officer ordered the inmate to move a 40–point bed board in violation of a posted medical restriction. *See id.* at 195. The Second Circuit held that these allegations stated a claim for relief. *Id.* However, the Court upheld the dismissal of the complaint against the prison superintendent, stating "[a]bsent some personal involvement by [the superintendent] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983." *Id.* at 196. As the Court noted, dismissal is proper where the plaintiff does no more than allege that the superintendent is in charge of the prison. *See id.; see also Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974) (complaint against prison superintendent dismissed where plaintiff failed to allege that the superintendent authorized the officer's conduct or that there had been a history of similar incidents); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (warden not liable for a correction officer's single spontaneous beating of an inmate); *Bowman v. Casler,* 622 F.Supp. 836, 838–39 (N.D.N.Y.1985) (sheriff's summary judgment motion granted where plaintiff failed to submit evidence that the sheriff authorized the assault or that a policy existed allowing such conduct).

Here, Anderson does not allege that Sullivan was directly involved in the December 18, 1987 incident. Nor does he claim that Sullivan had an opportunity to remedy the alleged wrong, that he created a policy under which the violation occurred, or that he was grossly negligent in managing his subordinates. As in *Gill v. Mooney,* 824 F.2d at 192, plaintiff does no more than allege that Sullivan was in charge of the prison and thereby "condoned" the conduct of Kerns and Holmes. As the cases cited above show, this allegation is insufficient to establish a supervisor's liability under § 1983.

Even if further discovery were to disclose evidence to contradict Sullivan's direct statement as to incidents involving Kerns and Holmes or even to reveal a pattern of unconstitutional use of force at Sing Sing, such a showing would be una-

vailing, given Anderson's injuries as discussed above.

The complaint will be dismissed with prejudice and without costs.

It is so ordered.