**Pedro BRIDGEWATER, Plaintiff,**

v.

**J. TAYLOR, et al., Defendants.**

No. 08 Civ. 3593 (VM).

United States District Court,
S.D. New York.

Dec. 21, 2011.

Pedro Bridgewater, Stormville, NY, pro se.

Kevin Ryan Harkins, Reed Smith, LLP, Philadelphia, PA, for Defendant J. Taylor.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff Pedro Bridgewater ("Bridgewater") brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983") against seven current or former officials of New York State's Sing Sing Correctional Facility ("Sing Sing"), including four unidentified correctional officers. Bridgewater alleges violations of his Eighth Amendment rights by the three named defendants (collectively "Defendants"): first, that correctional officer Jarod Taylor ("Taylor") used excessive force against Bridgewater; second, that correctional officer Trailer[1] ("Trailer") failed to protect Bridgewater from Taylor; and third, that former Sing Sing Superintendent Brian Fischer

("Fischer") failed to supervise and properly train the correctional officers involved in the incident.

On April 7, 2011, Bridgewater filed a motion for summary judgment against Taylor pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). By Order dated September 27, 2011, the Court preliminarily denied Bridgewater's motion, for which the Court now sets forth its findings, reasoning, and conclusions.[2]

On October 21, 2011, Bridgewater moved for reconsideration, pursuant to Local Civil Rule 6.3, of the Court's September 27, 2011 Order. Separately, Fischer and Trailer filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons discussed below, Bridgewater's motion for reconsideration is DENIED, and the motion of Trailer and Fischer to dismiss is GRANTED as to both.

## I. BACKGROUND[3]

### A. FACTUAL BACKGROUND

This action arises out of events that occurred at Sing Sing, where Bridgewater was incarcerated at all relevant times. On the afternoon of August 29, 2006, Bridgewater was stopped by Taylor and nonparty A. Merrith[4] ("Merrith") while pass-

1. The parties have not disclosed Trailer's first name.

2. Following the issuance of this Order, Bridgewater objected that he had not submitted a reply memorandum. The Court granted Bridgewater leave to file a reply with a deadline of November 28, 2011. On November 28, 2011, the Court granted Bridgewater an extension until December 9, 2011. To date, the Court has not received Bridgewater's reply.

3. The summary below is derived from the following submissions of Bridgewater and Taylor and any documents and exhibits at-

tached thereto: (1) Bridgewater's Affidavit in Support of His Motion for Summary Judgment ("Bridgewater Aff."); (2) Taylor's Memorandum of Law in Opposition to Bridgewater's Motion for Summary Judgment; (3) Bridgewater's Reply to Taylor's Opposition to His Motion for Summary Judgment; (4) Bridgewater's Second Amended Complaint ("Second Amended Compl."). Except where specifically referenced, no further citation to these sources will be made.

4. In previous opinions, this Court has used the name "Merritt," which was the spelling originally used in the State's pleadings. However, the State has since changed the

ing through the second floor hallway of the Sing Sing school building. This encounter took place in front of Trailer's desk, although Trailer herself was not involved in the encounter. Taylor asked Bridgewater where he was coming from and demanded to see his inmate identification card. Bridgewater asserts that he complied with both of Taylor's demands, but that Merrith stated, "Don't be a smart ass and state your cell location." (Bridgewater Aff. ¶ 5.) Taylor, on the other hand, maintains that Bridgewater responded with uncooperative statements such as "why do you want to know" and "I don't have to give you that." (Declaration of Jarod Taylor ("Taylor Decl.") ¶ 5.) Both parties agree, however, that at one point during this encounter, and contrary to Taylor and Merrith's orders, Bridgewater walked away from them and into a classroom. Taylor and Merrith removed Bridgewater from the classroom, and Taylor escorted him to his cell block.

On the way to Bridgewater's cell block, Taylor and Bridgewater passed through the "lower school tunnel," where Taylor subjected Bridgewater to a pat frisk. Taylor maintains that Bridgewater initially refused to comply with the pat frisk, telling Taylor, "Do you want to fight? I'll fuck you up." (Taylor Decl. ¶ 7.) After ignoring several direct orders, Bridgewater appeared to comply with Taylor's demands by placing his hands on the wall. Taylor then claims that, as he began to pat down Bridgewater, Bridgewater suddenly spun and attempted to strike him with his right fist. At this point, Taylor grabbed Bridgewater by the right arm and shoulder and forced him to the floor on his stomach, pinning him until another officer arrived with handcuffs. Bridgewater was then transported to the infirmary in accordance with Sing Sing's standard protocol

for "use of force" incidents. Following the incident, Taylor memorialized his version of the events in a Use of Force Report and Inmate Misbehavior Report.

Bridgewater, on the other hand, maintains that he complied at all times with Taylor's orders and denies ever attempting to strike him. Bridgewater alleges that after Taylor forced him to the ground, Taylor began to hit him while other officers stood by and laughed. According to Bridgewater, some of those officers then joined in the beating. In support of his account, Bridgewater submits corroborating testimony from correctional officer Gubana Guobadia ("Guobadia"), who testified in a subsequent disciplinary hearing regarding the incident that he did not see Bridgewater attempt to strike Taylor. Bridgewater also submits two statements made by inmates who witnessed him being dragged out of the tunnel following the incident. A Report of Inmate Injury ("Injury Report"), dated August 29, 2006, indicates that Bridgewater suffered an abrasion on his right forearm and redness on his chest. The Injury Report also noted that Bridgewater complained of pain in both knees, arms, and his neck, although there was "no redness or swelling." (Injury Report at 1.)

On August 30, 2006, Bridgewater filed an Inmate Grievance Complaint with the Inmate Grievance Resolution Committee ("IGRC") regarding the incident. After receiving an unfavorable determination from the IGRC, Bridgewater appealed the decision to Fischer, who similarly returned an unfavorable decision. Bridgewater subsequently appealed Fischer's decision to the Central Office Review Committee ("CORC"), which denied the appeal on November 29, 2006.[5]

---

spelling, and the Court now adopts that spelling as well.

5. New York State's Department of Correctional Services ("DOCS") has a three-tiered

## B. *PROCEDURAL BACKGROUND*

Because Bridgewater challenges Trailer and Fischer's motion to dismiss on procedural grounds, the relevant procedural background is summarized below.

Bridgewater filed his original complaint in this action on April 15, 2008, followed by an amended complaint on March 5, 2009 (the "First Amended Complaint"). Although both complaints named Trailer and Fischer as defendants, they were not served with process for either complaint. On April 23, 2009, three of the six original defendants filed a motion to dismiss the First Amended Complaint. The Court granted their motion on March 8, 2010, 698 F.Supp.2d 351 (S.D.N.Y.2010), and dismissed *sua sponte* Bridgewater's claims against Trailer and Fischer. On April 6, 2010, 2010 WL 1459722, the Court authorized Bridgewater to amend his complaint for a second time (the "Second Amended Complaint") and to replead his claims against Trailer and Fischer. On October 14, 2010, Bridgewater filed his Second Amended Complaint. In mid-April of 2011, he mailed a copy of the Second Amended Complaint to the Office of the Attorney General of the State of New York ("Attorney General") in an attempt to serve Trailer and Fischer.

On April 29, 2011, Bridgewater brought a motion for default judgment against Trailer and Fischer for failure to answer the Second Amended Complaint. Trailer and Fischer opposed the motion for default judgment, claiming that the Second Amended Complaint was improperly served on them, but later agreed to waive the issue of proper service in a June 2, 2011 telephone conference before Magistrate Judge Henry Pitman. Shortly thereafter, on June 28, 2011, Trailer and Fischer filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6). In light of the motion to dismiss, this Court issued an order denying Bridgewater's motion for default judgment as moot on July 7, 2011. On August 4, 2011, Bridgewater opposed Trailer and Fischer's motion to dismiss on the ground that their motion was time-barred under Fed. R.Civ.P. 12(a)(1)(A)(i) ("Rule 12(a)(1)(A)(i)"). Trailer and Fischer replied in support of their motion to dismiss on November 16, 2011.

## II. *DISCUSSION*

### A. *BRIDGEWATER'S SUMMARY JUDGMENT MOTION*

#### 1. *Summary Judgment Standard*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact ex-

---

grievance system, all levels of which must be exhausted before a § 1983 action may be brought in federal court. *See Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). An inmate must first file a complaint with the IGRC, whose determination may then be appealed to the superintendent. *See Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004). Finally, DOCS permits an inmate to appeal the superintendent's decision to CORC. *See id.*

ists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; he cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Furthermore, a non-movant must produce more than "a scintilla of evidence" in support of his position. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Essentially, at the summary judgment stage, a nonmoving party "must offer some hard evidence that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998). Finally, while the submissions of pro se litigants are to be liberally construed, *see, e.g., Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), the fact that a party is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* No. 00 Civ. 8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

## 2. *Excessive Force Standard*

■ Bridgewater alleges that Taylor's actions constitute excessive force in violation of the Eighth Amendment. The "core judicial inquiry" in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* —— U.S. ——, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995

(2010) (*quoting Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). This inquiry includes both a subjective and an objective component.

■ The subjective component requires a showing that the defendant possessed the "necessary level of culpability, shown by actions characterized by wantonness" in light of the circumstances surrounding the challenged conduct. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999) (internal quotation marks omitted). In making this determination, courts have looked at "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003); *see also United States v. Walsh,* 194 F.3d 37, 53 (2d Cir.1999).

■ The objective component requires a showing that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation" in light of "contemporary standards of decency." *See Hudson,* 503 U.S. at 8–9, 112 S.Ct. 995 (internal citation omitted). The United States Supreme Court has made clear that, in the excessive force context, "contemporary standards of decency" are *always* violated when prison officials "maliciously and sadistically use force to cause harm ... whether or not significant injury is evident." *Wilkins,* 130 S.Ct. at 1178 (*quoting Hudson,* 503 U.S. at 8–9, 112 S.Ct. 995). Thus, in excessive force cases, the objective component has effectively collapsed into the subjective component and may be satisfied by a simple showing that the force used was more than *de minimis.*[6] *See Hudson,* 503 U.S. at 9–10,

---

6. The gravity of the injury required to satisfy    the "harmful enough" standard for the objec-

112 S.Ct. 995 (recognizing that *de minimis* uses of force are "necessarily exclude[d] from constitutional recognition," but suggesting that even a de *minimis* use of force may violate the Eighth Amendment if it is "of a sort repugnant to the conscience of mankind").

### 3. *Application*

■ With respect to the subjective component, genuine issues of material fact exist as to whether Taylor acted with the malice or wantonness necessary for a constitutional violation or whether he was applying force in a good faith effort to maintain discipline. Taylor's primary claim is that he was acting to protect himself and restore order after Bridgewater allegedly attempted to punch him during the pat frisk. Bridgewater denies that he ever attempted to strike Taylor. In support of his version of events, Bridgewater submits excerpts from the transcript of the disciplinary hearing (the "Hearing Transcript"), in which Guobadia testified that he did not see the alleged punch even though he was in a position to see it.

■ As a general rule, however, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir.2005); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Moreover, it is worth noting that even if a jury chooses to credit Bridgewater's and Guobadia's testimony on this particular point, it could still reasonably find that Bridgewater's behavior otherwise justified the use of force.

For example, Taylor claims that Bridgewater was uncooperative throughout the incident, and Guobadia testified that Bridgewater "was brought down by Officer Taylor ... because of the argument that was going on between the two of them." (Hearing Transcript at 46.) Thus, because Taylor raises a genuine issue of material fact as to whether there was a need for him to apply force, summary judgment is inappropriate.

■ There also exist genuine issues of material fact under the objective component regarding whether the force used was more than *de minimis*. Bridgewater claims that during the pat frisk, Taylor "twisted" his head downward into a painful position while simultaneously telling him to lift his head. (Bridgewater Aff. ¶ 5.) Bridgewater also claims that after bringing him to the floor, Taylor got on top of his back and began to hit him. Bridgewater further claims that after he was handcuffed, he was "dragged" out of the tunnel. (*Id.* ¶ 6.) According to Taylor, however, his use of force was limited to grabbing Bridgewater's right arm and shoulder to guide him to the floor on his stomach so that he could handcuff him—a maneuver that a jury could consider *de minimis*. *See, e.g., Anderson v. Sullivan*, 702 F.Supp. 424, 427 (S.D.N.Y.1988) (granting officers' motion to dismiss because pushing inmate into cell bars and pulling his arms behind his back to apply handcuffs was considered de *minimis* force). In addition, a reasonable jury could find that the relatively minor injuries sustained by Bridgewater support Taylor's claim that the amount of force applied was minimal. Thus, as with the subjective component, the objective analysis boils down to an

---

tive component varies across different types of Eighth Amendment claims. *See generally*

*Hudson*, 503 U.S. at 8–9, 112 S.Ct. 995.

issue of credibility that cannot be resolved at the summary judgment stage.

Further, although Taylor's evidence consists solely of his own testimony, this dispute does not constitute one of those "rare circumstance[s]" in which "no reasonable person could believe [the non-movant's] testimony" such as would justify granting summary judgment. *Jeffreys,* 426 F.3d at 554 (affirming grant of summary judgment where there was nothing in the record to support the non-movant's allegations other than his "own contradictory and incomplete testimony"). Far from it, Taylor's own testimony offers a plausible alternate version of events to Bridgewater's, and it is thus sufficient to indicate the existence of a material dispute as to the amount of force Taylor used on Bridgewater and as to whether such force was wanton or unnecessary. *See, e.g., Coughlin,* 344 F.3d at 291 (holding that "[a]lthough [inmate plaintiff's] evidence may be thin, his own sworn statement is adequate to counter summary judgment" in an excessive force case); *Rossi v. Stevens,* No. 04 Civ. 1836, 2008 WL 4452383, at *5 (S.D.N.Y. Sept. 30, 2008) (denying summary judgment for officer defendants on an excessive force claim where parties "offer materially different accounts of the [ ] incident").

Ultimately, a jury crediting Taylor? version of the facts could reasonably infer that Taylor acted in good faith in restraining Bridgewater, and that he used a proportionate, if not *de minimis,* amount of force in doing so. Accordingly, Bridgewater's summary judgment motion is denied.

## B. *BRIDGEWATER'S MOTION FOR RECONSIDERATION*

■■ Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Secs. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). The threshold for prevailing on a motion for reconsideration is high. Motions for reconsideration are not granted unless the moving party can point to controlling decisions or factual matters that the court overlooked and that "might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir. 2003).

■ Bridgewater's motion for reconsideration of the Court's denial of his motion for summary judgment does not bring any new points of law or facts to the Court's attention. Moreover, Bridgewater's arguments, which largely concern the sufficiency of Taylor's evidence and the credibility of Taylor's testimony, are addressed in this decision. Thus, the Court denies Bridgewater's motion for reconsideration.

## C. *TRAILER AND FISCHER'S MOTION TO DISMISS*

### 1. *Motion to Dismiss Standard*

When considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint should not be dismissed for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The task of the court in ruling on a motion to dismiss is to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *In re Initial Publ. Offering Sec. Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

In the case of a pro se litigant, the Court reads the pleadings leniently and holds them to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). This guidance applies with particular force when the plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.2004). However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

### 2. *Procedural Issues*

■ As an initial matter, this Court addresses Bridgewater's argument that Trailer and Fischer's motion to dismiss is time-barred under Rule 12(a)(1)(A)(i), which provides that "a defendant must serve an answer within 21 days after being served with the summons and complaint." In raising this argument, Bridgewater ignores the fact that his own service was deficient. Bridgewater did not attempt to serve the Second Amended Complaint on Trailer and Fischer until mid-April of 2011—approximately six months after he filed the Second Amended Complaint with the Court in October of 2010. Federal Rule of Civil Procedure 4(m) provides that service must occur within 120 days after the complaint is filed. Moreover, Bridgewater mailed the Second Amended Com-

plaint to the Attorney General, who was not engaged as Trailer and Fischer's counsel at that time. Because Bridgewater never properly served Trailer and Fischer, their motion to dismiss cannot be time-barred.

■ Even assuming that Trailer and Fischer were properly served with the Second Amended Complaint, and that they defaulted by failing to respond within 21 days of service,[7] this Court would have good reason to set aside the default under Federal Rule of Civil Procedure 55(c) because the delay was not willful, does not appear to have prejudiced Bridgewater, and because Trailer and Fischer present a meritorious defense. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993) (holding that, in deciding whether to set aside an entry of default, a court must consider: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."). Accordingly, this Court rejects Bridgewater's proposed disposition of the case on procedural grounds and moves on to the merits of the motion to dismiss in accordance with this Circuit's expressed "preference for resolving disputes on the merits." *Id.* at 95.

### 3. *Section 1983 Claims*

■ To state a claim under § 1983, Bridgewater must show that, while acting under color of state law, defendants deprived him of federal constitutional or statutory rights. *See McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir.2007). It is undisputed that Trailer and Fischer were, at the time of the alleged actions, actively employed by DOCS; thus, the state action require-

---

**7.** "A defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2692 (3d ed. 1998); *see also* Fed.R.Civ.P. 55(a).

ment is easily satisfied. Regarding the deprivation of federal constitutional rights by Trailer and Fischer, Bridgewater makes two claims. First, he alleges that Trailer violated his Eighth Amendment rights by failing to protect him from the alleged beating by Taylor. Second, Bridgewater alleges that Fischer violated his Eighth Amendment rights by failing to supervise or train the correctional officers involved in the incident. In addition, although Bridgewater does not raise the claim in his Second Amended Complaint, this Court addresses whether Bridgewater has stated a due process claim against Fischer based on Fischer's role in reviewing Bridgewater's disciplinary proceedings and his grievance against Taylor.

### a. *Failure to Protect Claim Against Trailer*

■ Bridgewater claims that Trailer failed to protect Bridgewater from the alleged beating. The Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir.1996). This includes a duty to protect inmates from harm threatened by other officers. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."). To prevail on a failure to protect claim, a plaintiff must demonstrate that, objectively, the conditions of his incarceration posed a "substantial risk of serious harm" and, subjectively, that the defendant acted with deliberate indifference in failing to protect the inmate from harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An official acts with deliberate indifference when he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S.Ct. 1970 (internal citations omitted).

■ Bridgewater failed to address the issues raised by this Court in its March 8, 2010 decision dismissing the First Amended Complaint. In his Second Amended Complaint, Bridgewater continues to allege no set of facts that would plausibly show that Trailer knew of and disregarded a substantial risk to Bridgewater. Trailer's sole connection to this case appears to be that the initial school building encounter between Bridgewater and Taylor took place in front of her desk; Bridgewater makes no further reference to Trailer in his Second Amended Complaint and does not allege that Trailer was present when the tunnel altercation occurred. Thus, even accepting Bridgewater's account of the initial encounter as true, it does not follow that, from observing that encounter alone, Trailer could be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Accordingly, the Court grants Trailer's motion and dismisses Bridgewater's failure to protect claim.

### b. *Claims Against Fischer*

■ Bridgewater argues that Fischer failed to supervise or train the correctional officers involved in the incident, and that Fischer inadequately handled the subsequent review of the incident. However, the United States Supreme Court has made clear that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iq-*

*bal,* 129 S.Ct. at 1948 (emphasis added). Thus, to successfully make out a claim against Fischer, Bridgewater must allege facts sufficient to plausibly show Fischer's personal involvement in the unconstitutional activity. The Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where the supervisor (1) participated directly in the alleged constitutional violation, (2) failed to remedy a wrong after learning of the violation through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, (4) was grossly negligent in supervising the subordinates who caused the unlawful condition or event, or (5) demonstrated deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place.[8] *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

▮ Bridgewater makes a series of conclusory statements that are legally insufficient to state a claim falling into any of these categories. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1987) ("[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.") (internal citations omitted). For example, Bridgewater asserts that "[g]iven the manner in which the correction officers acted in the incident, it cannot be said that they were properly trained and/or closely supervised." (Second Amended Compl. at 5.) This statement is nothing more than a bare assertion that Fischer was Taylor's supervisor, which is insufficient to state a § 1983 claim. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (to hold a prison official liable under § 1983 "requires a showing of more than the linkage in the prison chain of command").

Bridgewater further alleges that because Fischer was later involved in reviewing Bridgewater's disciplinary proceedings and in assessing the grievance that Bridgewater filed against Taylor, Fischer failed to "remedy the alleged wrong after learning of it." (Second Amended Compl. at 5.) However, courts in this Circuit have held that such liability attaches only where the supervisory official is confronted with an *ongoing* violation. *See, e.g., Odom v. Calero,* No. 06 Civ. 15527(LAK)(GWG), 2008 WL 2735868, at *7 (S.D.N.Y. July 10, 2008) ("The reference in case law to an official who 'fails to remedy' a violation logically applies only to ongoing, and therefore correctable, constitutional violations—not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded.") (internal citation omitted). "Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Thompson v. New York,* No. 99CIV9875 (GBD) (MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001) (internal citations omitted). This interpretation is also consistent with *Iqbal'* s notion of personal involvement. Here, the Eighth Amendment constitutional violation

---

8. The Second Circuit has not addressed whether the Supreme Court's decision in *Iqbal* has limited or otherwise altered these five categories of conduct held to give rise to personal involvement. *But see Bellamy v. Mount Vernon Hosp.,* 07 Civ. 1801, 2009 WL 1835939 (S.D.N.Y. June 26, 2009) (holding that only the first and part of the third *Colon* categories pass *Iqbal'* s muster).

allegedly committed by Taylor had concluded by the time Fischer was called upon to review it. Thus, Bridgewater has alleged insufficient facts to plausibly show that Taylor was "personally involved" in the commission of the alleged Eighth Amendment violations.[9]

Accordingly, the Court grants Fischer's motion and dismisses Bridgewater's claims against Fischer.

## III. ORDER

For the reasons stated above, it is hereby

ORDERED that the motion (Docket No. 50) of plaintiff Pedro Bridgewater ("Bridgewater") for summary judgment is DENIED; and it is further

ORDERED that the motion (Docket No. 91) of Bridgewater for reconsideration of the Court's denial of his motion for summary judgment (Docket No. 50) is DENIED; and it is further

ORDERED that the motion to dismiss (Docket No. 65) of defendants former Superintendent Brian Fischer and Correctional Officer Trailer is GRANTED; and it is further

ORDERED that the next conference before this Court to consider Bridgewater's remaining claims shall be scheduled upon conclusion of pretrial proceedings as determined by Magistrate Judge Henry Pitman.

SO ORDERED.

---

**9.** Bridgewater's allegation that Fischer inadequately reviewed Bridgewater's disciplinary proceedings and his grievance against Taylor following the incident could be construed as an attempt to make a due process claim under § 1983. However, a violation of inmate grievance procedures does not give rise to a claim under § 1983. *See, e.g., Swift v. Twedell*, 582 F.Supp.2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established ... that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.").